No. 34,463

THE STATE OF KANSAS, ex rel. JAY S. PARKER, Attorney General, *Plaintiff*, v. THE CITY OF LAWRENCE, C. B. RUSSELL, as Mayor; WILLARD BROWN, HARRY NEVIN, ISIAH EBERHART, WILFRED HUNSINGER, FRANK ROWLAND, FRANK A. RUSSELL, JOHN SELIG, RALPH A. BURGERT, A. W. BERGER, HARRY EDMONDSON and RALPH PINE, as Councilmen, etc., *Defendants*.

(92 P. 2d 31)

Opinion filed July 8, 1939.

*Jay S. Parker,* attorney general, and *A. B. Mitchell,* assistant attorney general, for the plaintiff.

*George K. Melvin,* of Lawrence, for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an original proceeding in quo warranto. The form of the action is to question the right of the governing body of the city of Lawrence to enter into a lease with the military board of the state for the use of a building which the city authorities contemplate building. The facts are agreed upon. They are as follows: On April 4, 1939, an election was held in the city of Lawrence at which a majority of the votes were cast in favor of the issuance of not to exceed $75,000 in bonds of the city, the money to be derived from the sale of these bonds to be used for the construction of a national guard armory and community building to be built in the city. This election was had in conformity with and under the authority of G. S. 1935, 12-1647. The city is proceeding with the procurement of a site and the erection of a building and has made a contract with the military board whereby the city has agreed to rent this building to the military board for a term of two years, to be used as a national guard armory by the national guard organizations stationed in the city. The board has agreed to pay the city $2,400 annually as rent. No question is raised by anyone as to the right of the city to vote bonds for the erection of an armory. (See G. S. 1937 Supp., 12-1646.) Sometime during the progress of or subsequent to the bond election some one questioned the authority of the city governing body to charge rent for the use of a building as a national guard armory. On account of this question being raised this action was brought by the attorney general at the request of the city governing body so that the authority in the matter might be settled. It is one more of the many cases where quo warranto is used in the nature of a friendly action to settle the rights of parties before anyone has been damaged.

The position of the city is that since by the terms of G. S. 1937 Supp., 12-1646, the legislature gave the city the authority to build a national guard armory the authority to lease the building to the military board is implied.

It would be easier to agree with this argument were it not for the fact that the legislature has from time to time enacted statutes providing a policy for cities and counties in the matter of armories for

the national guard. At the outset of this discussion it must be noted that there is nothing much better settled than the proposition that cities derive all their power from the legislature. Thus in 19 R. C. L., at page 768, we find the following statement:

"It is well settled that a municipal corporation has only such powers as are clearly and unmistakably granted to it by its charter or by other acts of the legislature, and consequently can exercise no powers not expressly granted to it, except those which are necessarily implied or incident to the powers expressly granted and those which are indispensable to the declared objects and purposes of the corporation. Any fair and reasonable doubt concerning the existence of the power, or any ambiguity in the statute upon which the assertion of the power rests, is to be resolved against the corporation and the power denied. When, however, power over a particular subject matter has been delegated . . . without any express limitations, the extent to which that power shall be exercised rests in the discretion of the municipal authorities."

We must examine the provisions of article 3 of chapter 48 of the General Statutes of 1935 to find where the legislature has provided for a policy in the relationship between cities and the military board. G. S. 1935, 48-301, provides as follows:

"That the military board of the state is hereby empowered and directed to erect or provide, anywhere within the limits of this state, upon such terms and conditions as shall be decided upon by said military board as most advantageous to the state, armories for the use of the national guard of Kansas, which armories shall be used for drill, meeting and rendezvous purposes by the organization of the national guard occupying same, and such other public functions which the officers in charge of said armory may deem advisable and proper, and which shall also be opened for meetings and functions of the Grand Army of the Republic, the Spanish-American War Veterans, and their auxiliary organizations."

G. S. 1935, 48-305, provides as follows:

"That such military board shall have power to receive from counties, cities, municipalities, or other sources, donations of land or contributions of money, buildings or other property to aid in providing or erecting armories throughout the state, for the use of the national guard of Kansas, and which shall be held as other property for the use of the state of Kansas; and such counties, cities or other municipalities are hereby authorized to make such contributions for the purpose of this act, and each city of the state of Kansas is hereby authorized and empowered to levy a tax upon all the property therein subject to taxation to raise the necessary money for said armory building and site herein specified: *Provided,* That no money shall be donated or tax levied until the same is authorized by a vote of the majority of electors in said city at an election called for that purpose."

G. S. 1935, 48-308, provides as follows:

"That every city and county in the state of Kansas now having or that may

hereafter have a national guard organization within its boundaries is hereby authorized and empowered to render such financial assistance as it may deem wise and patriotic to such national guard organization, either by donating lands or buildings, or donating the use of lands or buildings, or by contributing money to their equipment and maintenance."

The legislature has been making appropriations for paying armory rent for many years. The question we are discussing must in the nature of things have been considered by the legislature many times. It is worthy of note that the statutes quoted give the cities authority to donate an armory to the national guard, or donate the use of land or buildings, but nowhere do these sections give the city the right to furnish the armory and charge rent for it. At this juncture it must be pointed out that the authority for the action contemplated by the city must be found in the statutes. We are unable to find such authority.

It should be noted here that we are not passing on the authority of a city to lease a part of a city building for limited periods where the use of the building by the persons paying rent is only occasional or is only incidental to the city's use of the building. That question is not before us.

We hold that the city is without authority to lease a building to the military board and charge rent for it for use as an armory.

Judgment will be rendered for the plaintiff. It is so ordered.

THIELE, J., not participating.